THE ELMOHAR COMPANY, Appellant, *v.* PEOPLE'S SURETY COMPANY OF NEW YORK, Respondent.

Building contract — default by contractor before completion of work — when owner may maintain action against surety of contractor for moneys expended and to be expended in completing buildings — questions for jury.

A contractor gave a bond of a surety company, the defendant herein, for the faithful performance of the work in erecting two houses. After the first house had been partially built and the contractor had been paid the contract price therefor in part, and before any substantial work had been done on the second house, the contractor stopped work. After the expiration of the time in which the two houses were to be completed, the plaintiff, pursuant to the terms of the agreement, canceled the agreement and completed the first house at a cost considerably more than the amount remaining unpaid to the contractor. Subsequently, and after competitive bidding, plaintiff entered into an agreement with another contractor for the erection of the second house for a sum larger than that which was

19

to be paid to the first contractor. This action is brought to recover the amount of the bond given by the first contractor. At the close of the trial the court submitted specific questions of fact to the jury, all of which the jury found for the plaintiff and among which it was found that the damage suffered by plaintiff was the amount expended by plaintiff in completing the first house and the increased contract price for erecting the second house. *Held*, upon examination of the record, that some expenditure was properly and necessarily made in completing the first house and that the trial court was in error, therefore, in directing a verdict for the defendant and dismissing the complaint; that the court erred, also, in assuming that the defendant was not in any event liable upon the bond by reason of the failure of the contractor to erect the second house as provided in the original agreement, and that the question of the good faith of plaintiff, in contracting for the erection of the second house at the increased price after the failure of the original contractor, is a proper question for consideration, and a new trial must be granted.

*Elmohar Co.* v. *People's Surety Co.*, 158 App. Div. 932, reversed.

(Argued February 4, 1916; decided February 22, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 29, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alvin Cushing Cass* for appellant. The setting aside of the verdict of the jury as to house No. 34 was unwarranted and the additional dismissal of the complaint and refusal of a new trial was without excuse. (*Mersereau* v. *Mersereau*, 49 App. Div. 647; *Ventresca* v. *Beckwith*, 112 App. Div. 72; *Collins* v. *Carlin*, 106 App. Div. 204.) The court erred in ruling that the plaintiff could not recover its loss on house No. 35. (*Kidd* v. *McCormick*, 83 N. Y. 391; *Sacks* v. *Am. Surety Co.*, 72 App. Div. 60; 177 N. Y. 551; *Jones & O'Connor* v. *City of New York*, 60 App. Div. 161; 174

N. Y. 517; *Am. Surety Co.* v. *Woods*, 165 Fed. Rep. 741; *City of Goldsboro* v. *Moffit*, 49 Fed. Rep. 213; *Gillet* v. *Bank of America*, 160 N. Y. 549.)

*Allan C. Rowe* for respondent. The bond in suit was not intended to protect plaintiff against anything except the actual excess cost of constructing house No. 35. (*Hunt* v. *Railroad Co.*, 36 Fed. Rep. 481.) Plaintiff did not prove any damages of any sort arising out of the failure to build house No. 35. (*Pollock* v. *Queens L. & T. Co.*, 147 App. Div. 571.)

CHASE, J. The plaintiff entered into an agreement in writing with a contractor to erect for it two houses in Long Beach, L. I., one known as house No. 34 and the other as house No. 35.

In accordance with a provision of said agreement the contractor as principal and the defendant as surety gave to the plaintiff a bond of $4,000 upon condition " that if the said principal shall duly and faithfully perform and fulfill all and every the conditions and covenants of said contract above recited, on its part to be kept and performed, and also shall duly and faithfully indemnify and protect the said obligee against actual loss by reason of any and all claims arising from the non-fulfillment by said principal of said covenants, then this obligation to be void; otherwise to be and remain in full force and effect."

The contractor proceeded with the erection of house No. 34 and continued the work under the agreement until it had been paid sixty per cent of the contract price therefor. It delivered certain materials for the erection of house No. 35 but no substantial work was ever done toward the erection of said house and the materials delivered for use in the erection of that house were removed by the contractor. After the time provided by the agreement for the completion of said houses and on

August 3, 1910, pursuant to the terms of the agreement the plaintiff canceled the same and proceeded with the completion of house No. 34. The plaintiff alleges in substance that in the completion of house No. 34 it necessarily spent $1,967.07 more than the amount unpaid to the contractor at the time of the cancellation of the agreement. After competitive bidding and on December 29, 1910, it entered into an agreement with another contractor for the erection of house No. 35. The new agreement for the erection of house No. 35 was for $2,752 more than the agreement made with the contractor whose said bond was signed by defendant. At the time of the trial no work had been done on house No. 35. This action is brought to recover $4,000, the amount of the said bond. It is claimed by the plaintiff that it has been damaged to the extent of $1,967.07 by the failure of the contractor to perform his agreement so far as it related to house No. 34 and to the extent of $2,752 so far as it related to house No. 35. At the close of the trial the court submitted certain specific questions to the jury. The questions and the answers of the jury to each are as follows:

" 1. Was the termination of the contract by the plaintiff justified ? A. Yes.

" 2. Was there notice of the default given to the surety company and did the surety company have an opportunity to complete ? A. Yes.

" 3. What are the damages suffered by the non-completion of house No. 34 ? A. $1,967.07.

" 4. Does the plaintiff in good faith intend to complete house No. 35 ? A. Yes.

" 5. What are the damages suffered by the plaintiff by the non-completion of house No. 35 ? A. $2,752.

" 6. Did the plaintiff agree that the house No. 35 was not to be constructed until the following year only provided the surety company agreed to such a change in the agreement ? A. Yes."

After the jury answered the specific questions they were discharged, and the parties stipulated that the court could in the absence of the jury direct the same general verdict that it would have had the right to direct if the jury were present. The court subsequently directed a verdict for the defendant and judgment was entered dismissing the plaintiff's complaint.

The testimony before us is very unsatisfactory. It is difficult to determine accurately therefrom how much the plaintiff properly and necessarily expended for material and labor to complete house No. 34. A careful examination of the record, unsatisfactory though it is, convinces us, however, that some expenditure was properly and necessarily made by the plaintiff in the completion of that house over and above the amount remaining unpaid upon the agreement therefor with the contractor at the time when such agreement was canceled. It was error, therefore, to direct judgment for the defendant. The trial court was also in error in assuming that the defendant was not in any event liable upon the bond by reason of the failure of the contractor to erect house No. 35, as provided by the agreement. While the contract of suretyship is conditioned upon actual loss such loss may occur by the complete failure of a contractor to carry out his agreement to erect a house. Ordinarily in such a case the difference between the amount agreed to be paid for the erection of the house and the amount that it actually and necessarily costs to erect the house by subsequent contract or otherwise is the measure of such actual loss. If an agreement is made for the erection of a house and there is a total failure to carry out the agreement, and the person for whom the house is to be erected changes his mind and concludes not to erect the house, it is quite clear that no actual loss would occur by reason of the failure to carry out the agreement. The good faith of the plaintiff in contracting for house No. 35 after the failure of the original contractor to erect the same is,

therefore, a proper question for consideration. It is quite unnecessary to review the testimony in this case. Judgment should not have been directed for the defendant and the testimony is not such as to permit us to direct judgment upon the answers of the jury to the specific questions.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur.

Judgment reversed, etc.