NEW YORK MUNICIPAL RAILWAY CORPORATION, by LIND-LEY M. GARRISON, as Receiver, Plaintiff, *v.* INTER-CONTINENTAL CONSTRUCTION CORPORATION, GLOBE INDEMNITY COMPANY et al., Defendants.

(Supreme Court, Kings Trial Term, April, 1921.)

Contracts — breach of — when surety not released.

> Where an obligee has been guilty of acts and omissions in the performance of the contract of its obligor, which may be to the prejudice of the surety, the latter is only released to the extent of its actual damage, but this rule is subject to limitations not applicable to the present case. (P. 345.)
> A building contract provided: " In order to assist the contractor to prosecute the work advantageously the engineer shall, from time to time, as the work progresses, but not oftener than once a month, make in writing an estimate — when such estimate shall be approved by the engineer, ninety per cent of the amount stated therein shall be paid by the company to the contractor on or before the 20th day of the month following that for which the estimate is rendered." Weekly payments made during May, June and July for the work actually done and materials furnished to the extent of ninety per cent of the contract, were deducted from the monthly estimate for each of those months at the time when payment on the monthly estimate was rightly made. Between the first and the twentieth of June, July and August, monthly estimates as provided for by the contract were made and the contractor was paid that monthly estimate less the amount of the weekly payment. Similar weekly payments were made during August and though before the estimate for that month was made the contractor had

*Supreme Court, April, 1921.* [Vol. 115.

defaulted, it was paid the amount of the estimate for August, less the weekly payments made during that month. *Held,* that it appearing in an action for damages against the contractor and its sureties for faithful performance of the contract the sureties had suffered no actual damage they were not released by the weekly payments made in May, June and July. (Pp. 343–345.)

The contractor having defaulted before the monthly estimate for August had been made, plaintiff never became obligated to make any payment for that month and to the extent that he did make such payment, the sureties cannot be charged. Neither could any payment made to the contractor after his default be charged against the sureties. The deduction, therefore, of all of the payments from plaintiff's conceded damages would make no difference in the result to the sureties because of their limited responsibility. (P. 346.)

The bond of each of the sureties was $50,000, and one of them, a corporation in the hands of a foreign receiver, pleaded as a defense that a payment of $30,000 to complete the contract, paid out of retained percentages, which was a security for the surety, was made without its consent. *Held,* that while to the extent of such payment, the surety was discharged, its liability on its bond remained unaffected, even conceding that such payment and said surety's share of the full amount of the weekly payments were not all properly made. (P. 347.)

The action was rightly brought against said surety, in this state, and judgment may be properly entered against it. (Id.)

Action for damages for breach of contract and to recover upon surety's bond.

George D. Yeomans (Charles L. Woody, of counsel), for plaintiff.

Frederick L. Keating, for defendants.

James I. Cuff, for defendant New England Equitable Insurance Company.

Lazansky, J. Action for damages against defendant contractor for failure to complete the work provided for under the contract, and against the defendants surety

companies on their bonds for the faithful performance of the contract by the contractor — each defendant in the sum of $50,000. The defendants surety companies defend on the claim that they are discharged from their obligations because plaintiff instead of making monthly payments to the contractor on monthly estimates, as provided for by the contract, during certain months preceding the contractor's default made weekly payments to it. Defendant New England Equitable Insurance Company defends on the further ground that as to it, the time for the completion of the contract was extended and $30,000 were paid out of retained percentages without its consent. The contract provides: '' In order to assist the contractor to prosecute the work advantageously the engineer shall, from time to time, as the work progresses, but not oftener than once a month, make in writing an estimate — when such estimate shall be approved by the engineer, ninety per cent of the amount stated therein shall be paid by the company to the contractor on or before the 20th day of the month following that for which the estimate is rendered.'' During the months of May, June, and July, instead of making the payments provided for by the contract, plaintiff made payments by the week for the work actually done and materials actually furnished, to the extent of ninety per cent thereof. Between the first and the twentieth of June, July, and August, the monthly estimates were made as provided for by the contract, and the contractor was paid that monthly estimate, less the amounts paid weekly, as above stated. Similar weekly payments were made during the month of August. But before the monthly estimate for that month was made, the contractor defaulted, and after his default he was paid the amount of the monthy estimate for the month of August, less the weekly payments made during

August. The question is are the surety companies discharged because of these weekly payments? No actual damage to the sureties has been shown by these indulgences of plaintiff to the contractor. The sureties, however, contend it is not necessary to show that there was damage; all that must be shown is that the sureties *may* have been damaged. They claim that here, by giving the contractor advance payments, his incentive to finish the job was blunted and for that reason the sureties were prejudiced and are therefore discharged.

It is well settled that where the contract between the principal and obligee is altered the surety is, as it is expressed, " released " whether or not he is damaged. I doubt the accuracy of the term " released." Would it not be more accurate to say that where the contract has been altered, the surety is not liable because he was not a party to such a contract? *Non hæc in fœdera veni.* Such is the case where a valid extension of time to pay the debt is given by a creditor to his debtor without the surety's consent. *Merrill* v. *Reiners,* 14 Misc. Rep. 583. Of course, in such case, it is not necessary to show damage. It has also been held (*Smith* v. *Molleson,* 148 N. Y. 241) that where the obligee by some act or omission, not an alteration of the contract, prejudices the rights of the surety, the latter is released. It seems to me this is too broad a statement and not strictly accurate. It is applicable to the cases cited in *Smith* v. *Molleson.* In the New York cases cited to support the proposition, it appears that the obligee by his act released the principal from his obligation, and it necessarily followed that the surety was released. In the often cited case of *Calvert* v. *London Dock,* 2 Keen, 638, cited in *Smith* v. *Molleson,* the obligee made payments out of what was considered security in excess of his damage by

reason of the principal's breach of the contract, and since the surety is subrogated to the benefit of the security, under the circumstances of that case he was released. It is not the law of this State that every act or omission of the obligee in the performance of the contract prejudicial to the surety releases the latter. In *Vose* v. *Florida R. Co.*, 50 N. Y. 369, it was said that where the obligee meddled with the security contrary to the contract, the surety is only discharged to the extent of the value of the security. It seems to me that the correct rule to be applied generally where the obligee has . been guilty of acts and omissions in the performance of the contract which may be to the prejudice of the surety, is the surety is only released to the extent of his actual damage. This rule may be subject to limitations which have no application to this case. It is not necessary to consider them. To decide this case is sufficient. While a different rule has been applied in other jurisdictions, my attention has been called to no authority in this state requiring me to hold otherwise. Since, therefore, it appears that the surety has not suffered any actual damage, I must hold that the surety is not released by the weekly payments made in May, June and July. I so decide without considering the effect of a tendency of the courts to deal less favorably with sureties for hire than with voluntary sureties. *St. John's College* v. *Ætna Indemnity Co.*, 201 N. Y. 335, 342. The weekly payments for May, June, and July were deducted from the monthly estimates for each of those months at the time when payment on the monthly estimate was rightly made. In that way the contractor finally received that to which he was entitled — part payment having been made in advance. Assuming, however, that these weekly payments were

prejudicial to the sureties to the extent thereof, if the total of them (about $92,000, including August) were deducted from the conceded damage (over $495,000), there would be still over $400,000 of damage to plaintiff, which, divided into four parts, would make over $100,000 for each of the surety companies, whose liabilities are limited to $50,000 each. The contractor defaulted before the monthly estimate for the month of August had been made. The company, therefore, never became obligated to make any payment for the month of August, and to the extent that it did make such payment the sureties cannot be charged. Plaintiff also had no right to make any payment to the contractor after its default and cannot charge that payment against the sureties. But a deduction of these payments and the other weekly payments from the plaintiff's conceded damage would make no difference in the result to the sureties, because of their limited responsibility. If I be wrong in my conclusion, it seems to me that the same result would be reached by applying the rules that seem to be laid down in *St. John's College* v. *Ætna,* 201 N. Y. 335: (1) That these payments were not advances, but loans, although they are characterized as advances by plaintiff. (2) The weekly payments were very small in light of the work being done; they were needed by the contractor, who was hard pressed for funds; they were for work and materials actually placed in the job and within the retained percentage provision of the contract and it would therefore work a practical injustice to hold that the surety companies were discharged. See, also, *Elmohar* v. *Phillips,* 188 App. Div. 100. As to the claim of the New England Company that it is discharged because of an extension of time to complete the contract, amounting to $30,000, it appears that the contract provides for an extension of time without the

consent of the sureties. As to the claim of discharge by reason of the payment of $30,000 out of retained, percentages, I shall hold, following the rule above stated, that to the extent that these moneys were paid out of retained percentages, which was security for the sureties, this surety was discharged. Giving to this defendant full credit for these $30,000 and its share of the full amount of weekly payments, even conceding they were all not properly made, the liability of this defendant to the extent of $50,000 would not be affected. With this result reached, it will not be necessary to consider the effect of certain clauses of the contract on the sureties' liabilities as contended for by plaintiff. Defendant New England Company also claims that no judgment can be entered in this court against it because it is in the hands of a receiver in Massachusetts. It does not appear that it has been dissolved. The action is rightly brought against it in the State of New York. *Kincaid* v. *Dwinelle*, 59 N. Y. 548; *Pringle* v. *Woolworth*, 90 id. 502.

Motion to set aside the directed verdict is denied.

Motion denied.